# JUDGE RAKOFF

  2228

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Peter Lindner

---

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

American Express Company

---

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

## COMPLAINT

Jury Trial:  ☐ Yes   ☒ No
(check one)

2010 MAR 15 PM 1:30
S.D. OF N.Y.

**I.     Parties in this complaint:**

A.     List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff     Name _____ Peter Lindner _____
              Street Address ___ 1 Irving Place, #G-23-C _____
              County, City _____ New York, New York _____
              State & Zip Code ___ NY 10003 _____
              Telephone Number ___ 212-979-9647 _____

B.     List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.


RECEIVED
JAN 29 2010
PRO SE

| Defendant No. 1 | Name | American Express |
|---|---|---|
| | Street Address | 200 Vesey Street |
| | County, City | New York, New York |
| | State & Zip Code | NY 10281 |
| | Telephone Number | 212-640-2000 |

| Defendant No. 2 | Name | |
|---|---|---|
| | Street Address | |
| | County, City | |
| | State & Zip Code | |
| | Telephone Number | |

| Defendant No. 3 | Name | |
|---|---|---|
| | Street Address | |
| | County, City | |
| | State & Zip Code | |
| | Telephone Number | |

| Defendant No. 4 | Name | |
|---|---|---|
| | Street Address | |
| | County, City | |
| | State & Zip Code | |
| | Telephone Number | |

## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal Questions          ☐ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue?      This matter has been previously before the SEC (Securities and Exchange Commission) and is a matter that was decided last year by USDJ John Koeltl as part of 06cv3834 Lindner v American Express and Qing Lin.

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship

Defendant(s) state(s) of citizenship

### III.   Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.   Do not cite any cases or statutes.   If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.   Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? _____
(See Attached Sheet)

_____

B.   What date and approximate time did the events giving rise to your claim(s) occur? _____
(See Attached Sheet)

_____

_____

C.   Facts: _____ (See Attached Sheet) _____

| What happened to you? |
|---|

_____
_____
_____

| Who did what? |
|---|

_____
_____
_____

| Was anyone else involved? |
|---|

_____
_____
_____

| Who else saw what happened? |
|---|

_____
_____
_____

### IV.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____
I( Plaintiff Lindner) was compelled to attempt to withdraw a filing from the SEC in April 2007,
and then I was (wrongly) barred from the April 2007 Amex Shareholder meeting, and was unable
to submit my Shareholder Proposal to the SEC due to Amex's misrepresentations of the Proposal's
contents / subject matter, and was almost barred from appearing and speaking at the April 2009
Annual Shareholder meeting for Amex's fear that the CEO would communicate with me when I
asked a question in that public forum.  I am an Amex shareholder of about 900=1,000 shares.
_____

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____

~~Amex should be compelled to agree to put the Lindner nomination and Lindner Shareholder Propos~~al on the April 2010 ballot so that informed shareholders can make decisions instead of having that delayed again, as Amex has done in 2007 and in 2009.

Amex should be compelled to publicly release the document previously requested by Amex to ~~be under Court seal, since Amex last year asserted to The Court that Amex has not "in any way~~ ~~restrained, obstructed, or in any way attempted to delay or frustrate Mr. Lindner's shareholder~~ ~~activities." [94E4LINC, April 14 2009, 10:14 a.m.].  Yet the truth is that Amex required in an all~~eged oral agreement of March 2007 "That Mr. Lindner, acting alone or in concert, directly or indirectly, will not submit any shareholder proposal under Rule 14(a)(8) under the Securities and Exchange Act of 1934, or any other rule under that Act, as amended, or any successor ~~rule;" [Tr 4, lines 2-6, Under Seal March 29th 2007 Agreement Transcript~~ ~~LindnervAmEx032907.pdf]~~

_____
_____
_____
_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 29 day of January , 20 10.

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 29 DAY OF Jan 2010
BY Diara Chan

Signature of Plaintiff

Mailing Address

NOTARY PUBLIC
DIANA CHAN
Notary Public, State of New York
No.01CH6205287
Qualified in New York County
COMMISSION EXPIRES 05/04/2013

1 Irving Place, #G-23-C

NY, NY 10003

Telephone Number    212-979-9647

Fax Number *(if you have one)*    212-979-9647

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

Inmate Number    _____

**Page 3, Items IIIA and B combined on When and Where Events occurred:**

1) NYC: March/April 2007 Lindner initially filed with the SEC, and Amex sought to have it withdrawn.

2) NYC and Washington, DC January 2009 Amex alleged that Lindner Shareholder Proposal should be excluded, whereas Amex knew it was about discrimination;

3) April/May 2009 in Greensboro, NC and NYC, CEO Chenault claimed Code of Conduct ("Code") had integrity and then a month later Qing left Amex, perhaps because Qing admitted violating the Code by breaching the June 2000 Lindner Amex agreement and perhaps violating Title VII of the Civil Rights Act of 1964


**Page 3, Item IIIC on the Facts:**

I (Plaintiff Lindner) had put a Shareholder Proposal ("Proposal") before American Express ("Amex") who has been fighting it since April 2007.  This Proposal is substantially the same for each year, as admitted by Amex in Court.  The question before the Court is whether a company can evade and avoid SEC regulations on Shareholder Proposals over a period of time, when it becomes clear that the Proposal was previously justified under the law and that the company dissembled in order to avoid complying with the law.


**Intent to Deceive The Court**

1) In April 2009, the matter was before USDJ Koeltl, where Amex wrongly stated that Amex had never interfered with me communicating with the SEC.
2) Amex also
   a. felt that I raised the issue too late which would
      i. be confusing to their shareholders and additionally
      ii. would cost Amex a lot of money, and
   b. suggested that if Amex could not stop The Court from requiring the proxy to include the Proposal,
      i. perhaps instead the matter be put off until April 2010 and
      ii. that failing to postpone for a year, that perhaps I should file a $1 million bond to cover the April 2009 expenses.
3) Amex had also alleged previously to the SEC that this was a general matter that could be handled by management, when Amex knew that the SEC specifically makes an exception for matters of social importance, e.g. discrimination.
4) Unlike most Court battles, filings with the SEC are supposed to be truthful and err on the side of too much information rather than conceal and rather than be in adversarial positions (an adversary does not admit weakness; an SEC filing trumpets weaknesses). Thus, Amex concealed that it knew my Shareholder Proposal was about discrimination, but tried to get the SEC to rule as if the matter was not about discrimination.

1

5) Amex was aware and I hereby declare that I am gay and was allegedly sexually harassed by Qing Lin on or about 1998 and allegedly retaliated against for complaining to Amex's Human Resources by being (wrongfully) fired in November 1998. Amex and I then signed an out-of-court settlement entitled the "June 2000 Amex-Lindner Contract" which was signed by Peter Lindner and by Ash Gupta.

6) Amex was aware that Qing breached the June 2000 Amex-Lindner Contract at several possible points in time (on or about):

   a. March 2005 when Qing breached the June 2000 Amex-Lindner Contract by conveying **"any information"** to a prospective employer FischerJordan and also not referring FischerJordan to Human Resources. It is unclear if Qing then informed his boss, Ash Gupta, as required by the Code.

   b. July 2005 when I (Plaintiff Lindner) informed Ash Gupta and Jason Brown, Esq. of Amex's General Counsel that Qing breached the agreement. It is unclear if Ash Gupta investigated this matter and then informed the Secretary of the Corporation Stephen Norman, as required by the Code.

   c. February 2006 when Jason Brown informed me (Peter Lindner) that Qing had told FischerJordan "I don't think Peter Lindner can work here". It is unclear if Mr. Brown then informed his boss, the General Counsel, as required by the Code. And it is unclear if the General Counsel then informed the Secretary of the Corporation Stephen Norman, as required by the Code.

   d. April 2006 when Mr. Brown wrote up a summary of his second investigation, and perhaps intentionally omitted that words Qing told FischerJordan in breach of ¶13 of the June 2000 Amex-Lindner Contract, and whether this document was presented to Secretary of the Corporation Stephen Norman, who asked Mr. Brown to investigate a second time.

   e. On October 7, 2006 when Ash Gupta received Exhibits 105 and 106 (date not clear) in evidence for *Lindner v Amex and Qing Lin* (06cv3834) in which I (Peter Lindner) notified Mr. Gupta of the admitted breach and asked Mr. Gupta to investigate as is his affirmative obligation under the Code;

      i. "[I hereby] formally ask you to investigate your employee Qing Lin as to whether Qing violated the agreement you personally signed with me in June 2000" [Tr. 266, lines 14-17, January 22, 2009] and that

      ii. 'Qing admitted to Jason Brown, your inhouse counsel, that Qing spoke to Boaz Salik at Fischer Jordan about me and admitted saying "I don't think he can work here." '

      iii. 'So, I am asking you now to investigate whether Qing violated the agreement, made any additional statements to Fischer Jordan and/or to other prospective employers. This is an affirmative obligation of the agreement you signed and incidentally of the Amex Code of Conduct.'

      iv. It is unclear if Mr. Gupta did converse with Qing about this, and whether Mr. Gupta then raised this ethical question with his manager (whomever that was), who would then have forwarded this ethical question as per the Code to Secretary of the Corporation Stephen Norman.

   f. January 15, 2009 when Qing admitted under oath that he gave **"any information"** to a prospective employer FischerJordan and also did not refer FischerJordan to Human Resources.

    g. January 22, 2009 when Jason Brown, Esq. Amex VP and Senior Counsel admitted under oath that Qing told him that Qing gave **"any information"** to a prospective employer FischerJordan , e.g.:

        i. "Peter is a technical guy" [Tr.210, lines 19-23] and

        ii. "I'm not sure whether he [Peter Lindner] can be used on at AXP [American Express]." [Tr.216, line 19; also Tr 231, lines 14-20; Tr 274, lines2-5]

        iii. It is unclear if Mr. Brown then on January 22, 2009 informed his boss, the General Counsel, as required by the Code. And it is unclear if the General Counsel then informed the Secretary of the Corporation Stephen Norman, as required by the Code.

7) Had the Amex employees had integrity and/or also followed the Code (not necessarily the same thing), several people (including Ash Gupta, Secretary of the Corporation Stephen Norman, and the General Counsel) would have been aware of the attempted breach followed by the actual breach of the June 2000 Amex-Lindner Contract several times over a period of 4 years.

## The Proposal for simplicity sake should be before the Shareholders

8) Given that the matter was brought up in the Amex April 27, 2009 Annual Shareholder's meeting, which was too late to appear on the proxy, along with my nomination for Director on the Amex Board of Directors, it is appropriate and timely that Amex be ordered to show cause why Amex should not be required to include my Shareholder Proposal about Discrimination and the Amex Code of Conduct, along with my nomination for the Board in the proxy for the April 2010 meeting.   It was too late for people to see the Proposal in print, debate its consequences and value, and to cast a vote prior to the April 27 2009 meeting  (votes were only collected on the day of the meeting).

9) Moreover, less than one month after the April 2009 meeting, the cause of all these problems with discrimination, Qing Lin, was forced to resign or quit from Amex. This made a mockery of the CEO Ken Chenault's words at the April 2009 meeting that he had "full confidence in the Company's Code of Conduct in the integrity and values of our employees" when in 2005 **some 4 years earlier** Qing had breached the June 2000 Amex-Lindner Contract signed by his boss Ash Gupta, now President of Banking.  In January 2009 Qing admitted under oath breaching two provisions of the June 2000 Amex-Lindner Contract.

10) Given that the Code requires ethical questions past, present or future to be consulted with one's manager, and that Qing's breach in 2005 constituted such an ethical question, and that Ash Gupta was Qing's direct manager from 1990's through 2009, then Ash Gupta was either informed by Qing as per the Code but Ash did not take actions to ameliorate the problem, or else Ash Gupta was informed on or about January 2009, and should have alerted CEO Chenault that the Code had not worked for 4 years. Alternately, CEO Chenault was aware that Ash Gupta's document was breached years earlier, despite the lack of integrity of the employee(s), and thus Mr. Chenault made a material misrepresentation of matters of fact to the April 2009 Shareholder's meeting, which is an SEC violation.

**Page 4, Item V on the Relief:**

Amex should be compelled to agree to put the Lindner nomination and Lindner Shareholder Proposal (below) on the April 2010 ballot so that informed shareholders can make decisions instead of having that delayed again, as Amex has done in 2007 and in 2009.

Amex should be compelled to publicly release the document (the alleged oral agreement) previously requested by Amex to be under Court seal, since Amex last year asserted to The Court that Amex has not restrained Mr. Lindner from communicating with the SEC:

"in any way restrained, obstructed, or in any way attempted to delay or frustrate Mr. Lindner's shareholder activities." [94E4LINC, April 14 2009, 10:14 a.m.].

Yet the truth is that Amex required in an alleged oral agreement of March 2007 not to write to the SEC:

"That Mr. Lindner, acting alone or in concert, directly or indirectly, will not submit any shareholder proposal under Rule 14(a)(8) under the Securities and Exchange Act of 1934, or any other rule under that Act, as amended, or any successor rule;" [Tr 4, lines 2-6, Under Seal March 29th 2007 Agreement Transcript LindnervAmEx032907.pdf]

Amex should release a statement indicating from each of the participants on when and whether Qing Lin followed the Code's protocol for informing his manager Ash Gupta of the breach of the agreement signed by Mr. Gupta, and when / whether Mr. Gupta then followed the Code's protocol to inform the Secretary of the Corporation Mr. Norman, and when / whether Mr. Chenault was aware of these events when Mr. Chenault replied to Mr. Lindner at the April 2009 Shareholder's Meeting that these employees handled the situation as per the Code's values with integrity as Mr. Chenault indicated. It is important that the timeliness of each event be noted, including whether Mr. Chenault then acted to dismiss Qing and / or if Mr. Chenault plans to correct his remarks. If the participants are no longer under Amex's control (e.g. Qing having left Amex), the complete files relating to these events should be released on the web for independent analysis by Shareholders and stock analysts.

Amex should reveal the amount of money (financial rewards) that Qing accrued by waiting 4 years to announce that he breached the June 2000 Amex-Lindner Contract. This goes to the point that there are financial incentives to an employee to breach the Code and cover it up as opposed to timely notice, which the Code nominally requires. If Qing and Ash had conspired by themselves and/or independently with Jason Brown, Esq. to keep the breach confidential thus allowing each of them to get salaries, bonuses and stock awards, the amounts should be detailed.

Amex should also indicate how, when and if the decision to turn Amex into a bank and then to take federal TARP (Troubled Assets Relief Program) on or about November 2008 was or should have been influenced by the actions of Qing and his boss, Ash Gupta (President of Amex Banking), considering that Title VII of the Civil Rights Act of 1964 which applies to

4

discrimination by a corporation would now be augmented by Title VI which covers companies using federal funds.

**Peter Lindner's Shareholder Proposal**

### NOTICE OF SHAREHOLDER PROPOSAL

To:
Stephen P. Norman (or to his replacement)
Secretary
American Express Company
200 Vesey Street, 50th Floor
New York, New York 10285

From:
Mr. Peter Lindner
1 Irving Place, Apt. G-23-C
New York, New York 10003

Date: December 29, 2009

This constitutes the proposal of shareholder Peter Lindner to be presented at the Annual Meeting of shareholders of American Express Company to be held on or about April 24, 2010.

Required Information pursuant to American Express Co. by-law 2.9:

**(i)      (a) Brief description of business proposal.**

Amend Amex's Employee Code of Conduct ("Code") to include mandatory penalties for non-compliance, the precise scope of which shall be determined by a "Truth Commission" after an independent outside compliance review of the Code conducted by outside experts and representatives of Amex's board, management, employees and shareholders.

**(b) Reasons for bringing such business to the annual meeting.**

Personal experience by Mr. Lindner of discrimination in violation of Title VII of the Civil Rights Act of 1964 and anecdotal evidence show that the Code is breached and not enforced. Rather, management regards the Code as nothing more than window-dressing for Sarbanes-Oxley compliance. This lack of adherence to basic principles of conduct erodes confidence in the Company, has affected or will affect the market price of the Company's shares, and warrants attention from the shareholders. In other words, this matter affects Shareholders as well as being socially significant, as is indicated in SEC Rule 14(a)(8) on Shareholder Proposals:

"proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g., significant discrimination matters) generally would not be considered to be

5

excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote."
http://sec.gov/rules/final/34-40018.htm

### (ii) Name and address of shareholder bringing proposal:

Mr. Peter Lindner
1 Irving Place, Apt. G-23-C
New York, New York 10003

### (iii) Number of shares of each class of stock beneficially owned by Peter Lindner:

Common: about 900 shares in ISP and Retirement Plan.

### (iv) Material interest of Peter Lindner in the proposal.

Mr. Lindner has no financial interest in the proposal.   He has been wronged by Amex employees' breach of the Code and Amex's failure to enforce the Code against those employees.

### (v) Other information required to be disclosed in solicitations.

Mr. Lindner is a plaintiff in an action against the Company arising out of the aforesaid breach.

**NOTICE OF APRIL 2010 AMERICAN EXPRESS SHAREHOLDER PROPOSAL BY PETER LINDNER**
**January 23, 2010**

### (a) Brief description of business proposal.

Amend Amex's Employee Code of Conduct ("Code") to include mandatory penalties for non-compliance, the precise scope of which shall be determined by a "Truth Commission" after an independent outside compliance review of the Code conducted by outside experts and representatives of Amex's board, management, employees and shareholders.

### (b) Reasons for bringing such business to the annual meeting.

Personal experience by Mr. Lindner of sexual harassment, retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1964 and anecdotal evidence show that the Code is breached and not enforced. Specifically, a Vice President of American Express ("Amex") breached an out of court settlement, and took 4 years to admit it. Apparently, management regards the Code as nothing more than window-dressing for Sarbanes-Oxley compliance. This lack of adherence to basic principles of conduct erodes confidence in the Company, has affected or will affect the market price of the Company's shares, and warrants attention from the shareholders. Right now, there is a monetary reason to not comply with ethics, in that by not reporting a problem, the wrong-doer can collect salary and bonuses for years. In other words, this matter affects Shareholders as well as being socially significant, as is indicated in SEC Rule 14(a)(8) on Shareholder Proposals:

> "proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g., significant discrimination matters) generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote."
> http://sec.gov/rules/final/34-40018.htm

For example, in Mr. Lindner's June 2000 Amex-Lindner Contract, had the Vice President immediately reported to his manager or sought guidance on ethical breaches, the manager would report it to the Secretary of the Corporation, possibly ending the matter quickly in 2005. Instead, the VP only admitted the breach in January 2009 under oath and left Amex in May 2009, after the Annual Meeting where this matter was discussed by Mr. Lindner and replied to by CEO Ken Chenault. Ken Chenault had written in his preface:

> "You are encouraged to discuss any questions or concerns you may have about the Code or the propriety of any past, present or anticipated conduct with your leader or other Company representatives listed in the Code."
> [Ken Chenault, Chairman and Chief Executive Officer, American Express Company Code Of Conduct, June 2005, page 1]
> http://media.corporate-ir.net/media_files/NYS/axp/corpgov/Amex074_COC.pdf

1

## NOTICE OF SHAREHOLDER PROPOSAL

To:
Stephen P. Norman (or to his replacement)
Secretary
American Express Company
200 Vesey Street, 50th Floor
New York, New York 10285

From:
Mr. Peter Lindner
1 Irving Place, Apt. G-23-C
New York, New York 10003

Date: January 23, 2010

This constitutes the proposal of shareholder Peter Lindner to be presented at the Annual Meeting of shareholders of American Express Company to be held on or about April 24, 2010.

Required Information pursuant to American Express Co. by-law 2.9:

**(i)     (a)  Brief description of business proposal.**

Amend Amex's Employee Code of Conduct ("Code") to include mandatory penalties for non-compliance, the precise scope of which shall be determined by a "Truth Commission" after an independent outside compliance review of the Code conducted by outside experts and representatives of Amex's board, management, employees and shareholders.

**(b)  Reasons for bringing such business to the annual meeting.**

Personal experience by Mr. Lindner of sexual harassment, retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1964 and anecdotal evidence show that the Code is breached and not enforced. Specifically, a Vice President of American Express ("Amex") breached an out of court settlement, and took 4 years to admit it. Apparently, management regards the Code as nothing more than window-dressing for Sarbanes-Oxley compliance. This lack of adherence to basic principles of conduct erodes confidence in the Company, has affected or will affect the market price of the Company's shares, and warrants attention from the shareholders. Right now, there is a monetary reason to not comply with ethics, in that by not reporting a problem, the wrong-doer can collect salary and bonuses for years. In other words, this matter affects Shareholders as well as being socially significant, as is indicated in SEC Rule 14(a)(8) on Shareholder Proposals:

> "proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g., significant discrimination matters) generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote."
> http://sec.gov/rules/final/34-40018.htm

For example, in Mr. Lindner's June 2000 Amex-Lindner Contract, had the Vice President immediately reported to his manager or sought guidance on ethical breaches, the manager would report it to the Secretary of the Corporation, possibly ending the matter quickly in 2005. Instead, the VP only admitted the breach in January 2009 under oath and left Amex in May 2009, after the Annual Meeting where this matter was discussed by Mr. Lindner and replied to by CEO Ken Chenault. Ken Chenault had written in his preface:

2

"You are encouraged to discuss any questions or concerns you may have about the Code or the propriety of any past, present or anticipated conduct with your leader or other Company representatives listed in the Code." [Ken Chenault, Chairman and Chief Executive Officer, American Express Company Code Of Conduct, June 2005, page 1]
http://media.corporate-ir.net/media_files/NYS/axp/corpgov/Amex074_COC.pdf

### (ii) Name and address of shareholder bringing proposal:

Mr. Peter Lindner
1 Irving Place, Apt. G-23-C
New York, New York 10003

### (iii) Number of shares of each class of stock beneficially owned by Peter Lindner:

Common: about 900 shares in ISP and Retirement Plan.

### (iv) Material interest of Peter Lindner in the proposal.

Mr. Lindner has no financial interest in the proposal. He has been wronged by Amex employees' breach of the Code and Amex's failure to enforce the Code against those employees. Mr. Lindner is gay.

### (v) Other information required to be disclosed in solicitations.

Mr. Lindner is a plaintiff in an action against the Company arising out of the aforesaid breach.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PETER W. LINDNER,

                              Plaintiff,                    AFFIRMATION OF SERVICE

        -against-

AMERICAN EXPRESS CORPORATION
                              Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Date: Friday, January 29, 2010

I, Peter W. Lindner, declare under penalty of perjury that I have served a copy of the "Complaint and an Order to Show Cause" upon a)   American Express  b) The Pro Se Office  whose addresses are:

Louise M. Parent                          Pro Se Office
Executive Vice President and              US District Court SDNY
General Counsel                           United States Courthouse
American Express                          500 Pearl Street
200 Vesey St                              New York, New York 10007-1312
NYC, NY  10004                            Pro Se Office phone:  212-805-0175

by email, fax, in person (and/or USPS).

By: _____    Dated: Friday, January 29, 2010
        Peter W. Lindner                  New York, NY
        Plaintiff, *Pro Se*
1 Irving Place, Apt. G-23-C
New York, New York 10003
Home/ Fax:    212-979-9647
Cell:         917-207-4962

> To the Pro Se Office:
> Please time stamp the
> extra original and send it
> back to me.
> Thanks,  Peter Lindner

SUBSCRIBED  AND  SWORN  TO  BEFORE  ME
THIS 29 DAY OF Jan  2010
BY _____
        _____
        NOTARY PUBLIC
        DIANA CHAN
        Notary Public, State of New York
        No.01CH6205287
        Qualified in New York County
        COMMISSION EXPIRES 05/04/2013