SCANNED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-2-2010

PRO SE OFFICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X
PETER LINDNER,
          Plaintiff,

-against-

AMERICAN EXPRESS COMPANY, CEO KEN
CHENAULT, BANKING PRESIDENT ASH GUPTA,
(FORMER) SECRETARY OF THE CORPORATION
STEPHEN NORMAN AND GENERAL COUNSEL
LOUISE M. PARENT,
          Defendants
---------------------------------X

Honorable Magistrate Judge Cott

10 Civ. 2228 (JSR-JLC)

REQUEST FOR EXTENSION, FOR GOOD FAITH DISCUSSIONS WITH ADVERSARY AND FOR AN ORDER ON SETTING THE RECORD STRAIGHT ON DEFENDANT STOPPING COMMUNICATIONS TO S.E.C.

Monday, November 01, 2010 7:21 AM
Via Fax: (212) 805-7990

To the Honorable Magistrate Judge Cott:

    I hereby request three things: an extension for my response to Mr. Sacca's reply / replies (?) and for good faith discussions with adversary, which I have written Mr. Sacca this weekend to have a discussion at his offices on Wednesday, November 3, 2010. And thirdly: an ORDER requiring Mr. Sacca to explain and document to set the record straight on whether Amex did stop me from communicating with the SEC in April 2007, and whether Mr. Sacca[1] denied that to USDJ Koeltl in April 2009.

### The Extension

    Mr. Sacca did not oppose my extension from 7 days to 10 days, which will make it Friday, Nov 5, 2010, which I ask be to respond to Mr. Sacca's reply of Oct 22, 2010. This is my first request for an extension on this deadline, which I am informed by the Pro Se Office is that one has 14 days to respond, and then 7 days to reply. And that if there are under 11 days, only working days are counted. This will affect my response to Mr Sacca's legal[2] filings of 290 pages on Oct 20, 2010 by an additional 14 days. The reason for the request is that Mr. Sacca is sending mixed signals on "good faith" discussions among "us" attorneys (I'm a pro se litigant, but Mr. Sacca is a member of the bar as an Officer of the Court), which include a document which is ambiguous as to whether it is a Memo of Law for Joe's letter of Oct 20, or for his Oct 22 response, since it contains elements of each. That document entitled "Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery" – which suggests it is

---

[1] In person, and in a brief with co-counsel Jean Park, of Kelley Drye Warren, which is a different law firm from Mr. Sacca of Skadden Arps.

[2] Mr. Sacca's document(s) comprise 290 pages (or more as I count them, and is entitled "Declaration Of Joseph N. Sacca In Support Of The American Express Defendants' Motion To Dismiss Plaintiff's Amended Complaint"

1

connected to Joe's response of Oct 22 which has the sentence "I write in response to Plaintiff Peter W. Lindner's October 21,2010 submission to the Court requesting a pre-motion conference concerning his motion seeking discovery in this action." However, Joe and I spoke, and Joe clearly reminded me that I should not include "sur-responses" in our planning, and I took him at his word. Yet, before I send my reply, but after I sent Joe numerous letters on the subject, Joe is in effect sur-replying.

**<u>Good Faith Discussions among Adversaries</u>**

Which brings me to the second matter for Your Honor: "good faith." Mr. Sacca claims he is conferring in good faith, but I think it is not good faith, and perhaps is bad faith, when

1. Mr. Sacca tells me no sur-replies, but then does a sur-reply some 3 days before I respond to his reply.
2. Mr. Sacca knows he is bound under Your Honor's Individual Practices to have a good faith discovery conference by phone or in person, and then refuses to do so by letter (as premature) and had postponed answering for 7+ days, when Your Honor's Individual Practices[3] require a response in 1 business day.
3. Mr. Sacca insists that 78u pre-empts Your Honor's Individual Practices even before Joe mentioned that law to me, which as I read it applies to "class actions" in its first sentence.[4] In Joe's ostensible memo of law of October 28 for the Oct 22 letter mentions "class" actions twice, both in a footnote on page 8, which refers to a precedent from Louisiana, which does not apply in SDNY.
4. Mr. Sacca also claims that my filings lack a schedule, when I asked Joe for a schedule and he refused to even meet to discuss it, except to say that discovery is premature, let alone set down dates certain.

So, that's my problem: Mr. Sacca appears to not be acting in what I'd call good faith. Unfortunately, I can't find a good definition of "good faith" in SDNY, however did find one from NY State Law, where it implies that if bad faith is rewarded, it would "defeat the purpose of punitive damages, which is to punish and deter others from acting similarly."

> "The director cannot obtain indemnification for the punitive damages imposed for his acts of bad faith, since indemnification would defeat the purpose of punitive damages, which is to punish and deter others from acting similarly. "[5]

---

[3] II. A. Pre-Motion Conferences in Civil Cases. 1. Discovery Motions. "Counsel must respond promptly (normally, within one business day) to any request from another party to confer in accordance with this paragraph." [Individual Practices Of Magistrate Judge James L. Cott, April 6, 2010]

[4] "The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." In context:
"TITLE 15 > CHAPTER 2B > § 78u–4 Private securities litigation
  **(a) Private class actions**
    **(1) In general**
    The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."
    [emphasis in original]

[5] The case was NY State.

2

[*Biondi v. Beekman Hill House Apartment Corporation,* Apr2000]

I assert, and I wish Your Honor to rule as to what "good faith" means. Here's what I would assert: Mr. Sacca is saying that under the assumption that his cause / presentation is correct and will win, then Mr. Sacca is okay with not conferring. I assert that good faith requires Mr. Sacca to confer as if neither Mr. Sacca nor I (Plaintiff Lindner) will win, and that discussions continue as Your Honor's Individual Practices require. I find it odd that Amex thinks they can only prevail by avoiding the rules of fair play; if that's the case, I suggested to Mr. Sacca to settle this dispute and move on. We are a nation of laws, not of men. Amex is domiciled in NYC and NY State, and should obey the NYC laws on EEOC / Human Rights, and the NY State laws against "intent to deceive" the Court, and federal laws on not giving misleading statements to shareholders (or amending those statements via SEC filings when they are found to be misleading)

There is a bizarre statement in Joe's brief, in referring to Qing Lin who lied to Amex and to Amex's lawyer, and admitted under oath some 4 years later in Jan2009 that he(Qing) indeed did in Mar/Apr2005 violated ¶13 of the June 2000 Lindner Amex Contract in **two ways**. I brought up that fact to Amex's CEO Ken Chenault in Apr 2009 Shareholder's Meeting. The CEO defended Qing in particular as having integrity, and then two weeks later, Qing was gone from Amex after working there for Amex's Banking President Ash Gupta for 15 years.

> "Lindner's baseless accusations cannot support an assertion that "evidence is in immediate and/or probable peril." *Sarantakis*, 2002 WL 1803750, at *3. Absent competent and credible evidence of an immediate risk of tampering or spoliation, the stay should remain in place. See *In re Vivendi Universal, S.A., Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003)"
> [page 9, or page 14 of 19, Memo of Law, October 28,2010]

So, even though a child would try to hid evidence of wrong-doing, it is clear that an adult such as Qing who admitted breaking a contract signed by his boss would also try to cover up such misdeeds. I wish to note that Qing was one of the top minds of Amex, won a prize as a student in China for being the best in a nationwide math test, and then controlled 100 people under him at Amex. Of course lying to Amex's VP / lawyer about violating the June 2000 Lindner Amex Contract signed by Ash Gupta is serious, and not baseless. The base is: Qing violated a contract signed by Ash and by me, and caused me 5+ years of aggravation, when Qing could have admitted it when I told Ash's secretary when I first heard about it in July 2005. I think "What we've got here is a failure to communicate"[6] – surely discussions about preservation of data are important, and good faith is important. Not a blanket denial of what's going on at Amex's top 20 executives. In fact, Mr. Gupta may even have lied in an interrogatory claiming he did not know what was going on with Qing:

---

*Nicholas A. Biondi, Appellant, v. Beekman Hill House Apartment Corporation, Respondent*, No. 18, Court Of Appeals Of New York, 94 N.Y.2d 659; 731 N.E.2d 577; 709 N.Y.S.2d 861; 2000 N.Y. LEXIS 520, February 16, 2000, Argued ; April 11, 2000, Decided

[6] This is "a famous line from the 1967 film **Cool Hand Luke**" starring Paul Newman, which was hypocritically said by the corrupt prison warden.
http://en.wikipedia.org/wiki/What_we've_got_here_is_(a)_failure_to_communicate

*I cannot recall any specific discussion I had with Qing Lin dating back to 2000 about the requirements of the June 2000 Settlement Agreement. However, this*

["I cannot recall any specific discussion I had with Qing Lin dating back to 2000 about the requirements of the June 2000 Settlement Agreement."...
Pacer Number 0152 of April 2009 Amex incl Ash Gupta interrogatories.pdf, p.41 of 70]

### Setting the Record Straight on Whether Amex Stopped Lindner from Communicating with the SEC in April 2007

The third issue is as Joe wrote me on Thursday, October 28, 2010 7:33 PM "Regarding your repeated efforts to continue to engage in a debate over your accusation that I made a "misrepresentation" intended to "deceive" Judge Koeltl during hearings before him in April2009". I request that Your Honor get a **definitive** statement from the Officer of the Court **Mr. Sacca with his current knowledge**, based upon the documents I sent Joe of the transcript of the alleged oral agreement between Amex and me in April 2007, to cite which documents show that, including the quotes and page numbers for ease of reference:

1. as to whether Amex did try (and I assert succeeded) in stopping me from communicating to the SEC in April 2007, and as to whether Joe Sacca and Jean Park as co-counsel (PL)
2. as to whether before Judge Koeltl in April2009 he and Ms. Park denied that Amex ever tried to stop me from communicating to the SEC

So, to sum up: Mr. Sacca and I may meet on Wed, Nov 3, 2010 at 5:30pm at his office to discuss the matters of good faith, discovery and schedules, if truly that is what Mr. Sacca wants, and I also want that. If Mr. Sacca cancels, I may have to seek sanctions.

Dated: New York, NY
       Monday, November 01, 2010

By: _____   *[signature] Peter Lindner*
    Peter Lindner
    Plaintiff, *Pro Se*
1 Irving Place, Apt. G-23-C
New York, New York 10003

Home/ Fax:    212-979-9647
Cell:         917-207-4962
Email:        nyc10003@nyc.rr.com

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X
PETER LINDNER,

                Plaintiff,                      Honorable Magistrate Judge Cott

      -against-

AMERICAN EXPRESS COMPANY, CEO KEN        10 Civ. 2228 (JSR-JLC)
CHENAULT, BANKING PRESIDENT ASH GUPTA,
(FORMER) SECRETARY OF THE CORPORATION    AFFIRMATION OF SERVICE
STEPHEN NORMAN AND GENERAL COUNSEL
LOUISE M. PARENT,

                Defendants
------------------------------------------------X

Date:  Monday, November 1, 2010

I, Peter W. Lindner, declare under penalty of perjury that I have served a copy of the "Request For Extension, For Good Faith Discussions With Adversary And For An Order On Setting The Record Straight On Defendant Stopping Communications To S.E.C." upon The Pro Se Office and via email to Joe Sacca of Skadden, and via fax to Magistrate Judge Cott whose addresses are:

| | |
|---|---|
| Joe Sacca, Esq. | Magistrate Judge Cott & |
| Skadden, Arps, Slate, Meagher & Flom LLP | ✓ Pro Se Office |
| Four Times Square | US District Court SDNY |
| New York, New York 10036 | United States Courthouse |
| Phone: 212.735.3000 | 500 Pearl Street |
| Fax: 917-777-2358 | New York, New York 10007-1312 |
| F: 212.735.2000/1 | Pro Se Office phone: 212-805-0175 |
| Joseph.Sacca@skadden.com | MJ Cott fax: 212-805-7990 |
| | MJ Cott Voice: 212-805-0250 |

by email, fax, in person (and/or USPS).

By _____
      Peter W. Lindner
      (Peter Lindner)
      Plaintiff, *Pro Se*
1 Irving Place, Apt. G-23-C
New York, New York 10003
Home/ Fax:   212-979-9647
Cell:           917-207-4962
Email:        nyc10003@nyc.rr.com

Dated: Nov 1, 2010
New York, NY

Affirmation of Service to Amex on Nov 1 2010 Request for Extension, Good Faith, and for Definitive Stmt on